**2015 UT App 186**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
RODNEY AMATO LITI,
Defendant and Appellant.

Opinion
No. 20130579-CA
Filed July 30, 2015

Third District Court, West Jordan Department
The Honorable Bruce C. Lubeck
No. 111401954

David M. Corbett and Craig L. Pankratz, Attorneys
for Appellant

Sean D. Reyes and John J. Nielsen, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES JOHN A. PEARCE and KATE A. TOOMEY concurred.

CHRISTIANSEN, Judge:

¶1 Rodney Amato Liti shot and killed his friend. A jury convicted him of manslaughter and possession of a firearm by a restricted person.[1] Liti appeals, arguing that the trial court erroneously instructed the jury on the meaning of "recklessly" for purposes of his manslaughter conviction and that his trial counsel rendered ineffective assistance by not objecting to the erroneous jury instruction. He also argues that the trial court

---

1. The jury also convicted Liti of other crimes. He does not challenge those convictions and they are therefore not relevant to this appeal.

erred in finding that he was a Category I restricted person for purposes of the firearm-possession charge, because that finding was based on evidence not presented to the jury. He contends that because the jury found only that he was a Category II restricted person, the trial court's finding resulted in his erroneous conviction of a second-degree felony rather than a third-degree felony.

¶2     We conclude that the trial court's instruction to the jury defining the reckless mental state for the offense of manslaughter omitted a necessary element and that Liti is therefore entitled to a new trial on the homicide charge. The State concedes that the trial court erred by finding that Liti was a Category I restricted person and entering the firearm-possession conviction as a second-degree felony. The State agrees with Liti that the conviction should properly be entered as a third-degree felony. We therefore reverse Liti's conviction for manslaughter and vacate his conviction for possession of a firearm by a Category I restricted person. We remand to the trial court for a new trial on the homicide charge and for entry of Liti's conviction for possession of a firearm by a Category II restricted person as a third-degree felony.

BACKGROUND

¶3     Liti shot his friend (Victim) during an argument.[2] Victim had borrowed Liti's car to sell drugs and had not timely returned the car. When Victim did not return on time, Liti sent

---

2. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Brown*, 948 P.2d 337, 339 (Utah 1997). Thus, we recite the facts here in a light most favorable to the jury's verdict that Liti caused Victim's death recklessly.

Victim a number of text messages threatening to harm him for not returning Liti's car.

¶4    Victim eventually returned the car to Liti's residence and soon began arguing with Liti and another man. That argument escalated into a brawl. At some point during the fight, Liti drew and cocked a handgun. Shortly thereafter, the gun "went off" and Victim was fatally wounded. Liti began to cry and apologize to Victim. He fled and was apprehended by police a short time later. He was charged with murder, possession of a firearm by a restricted person, and other crimes.

¶5    At trial, Liti testified that Victim had drawn a gun during the fight, prompting Liti to draw his own weapon to protect himself and to "[c]ontrol the situation." Liti testified that he "didn't even point the gun or aim the gun." However, he had "fumbled" the gun while pulling it out and was "holding the trigger area" when he saw that Victim "was coming towards [him]." Then, "meaning to push him back," Liti "grabbed on" to Victim. In doing so, he "squeezed" and "the gun went off."

¶6    The State argued that Liti, angry that Victim had not timely returned the car, intentionally killed Victim. Liti admitted that he shot Victim but argued that the shooting was accidental or done in self-defense. The jury was instructed on both of Liti's theories of the case. As relevant here, the jury was instructed that it could convict Liti of manslaughter only if it found that Liti had shot Victim under circumstances constituting imperfect self-defense or if it found that Liti had acted recklessly in causing Victim's death. The State also argued that Liti was a Category II restricted person because of his use or possession of drugs and was therefore guilty of possession of a firearm by a restricted person. The jury was instructed on this theory of the State's case but was not asked to determine whether Liti was a Category I restricted person by virtue of a prior conviction for a violent felony.

¶7     The jury convicted Liti of manslaughter and possession of a firearm by a restricted person. The jury found that Liti possessed a firearm and was an unlawful user or possessor of a controlled substance. At sentencing, the trial court observed that, during trial, the State had provided to the court evidence that Liti was on probation for a felony at the time of the shooting. The trial court therefore found that Liti was a Category I restricted person and that his firearm-possession conviction should thus be entered as a second-degree felony rather than a third-degree felony. The trial court noted that the jury "didn't have the opportunity to find" the prior conviction "because [the court] didn't submit it to them." The trial court explained, however,

> [There is] no question whatsoever, in fact, that Mr. Liti is a Category I restricted person. The jury didn't find that. But I'm going to declare that that conviction of possession of a firearm by a restricted person is a second-degree felony, finding beyond all doubt that he is a Category I restricted person. So I'm going to rule [the firearm-possession conviction] is a second-degree felony.

Liti now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶8     Liti argues that the jury instructions failed to correctly define "recklessly" for purposes of his manslaughter conviction. Whether jury instructions correctly state the law is a question of law. *State v. Weaver*, 2005 UT 49, ¶ 6, 122 P.3d 566. We therefore review jury instructions for correctness. *Id.*

¶9     Liti also argues that the trial court deprived him of his due process right to a jury trial on every element of the charged offense when the court found that Liti was Category I restricted person. Issues of due process are questions of law, and we

review for correctness the process afforded the defendant by the trial court. *State v. Turner*, 2012 UT App 189, ¶ 15, 283 P.3d 527.

ANALYSIS

I.  Trial Counsel Rendered Constitutionally Ineffective Assistance by Failing to Object to the Erroneous Jury Instruction.

¶10    Liti first argues that the jury instruction defining "recklessly" for purposes of his manslaughter conviction was incorrect because it omitted an element of the statutory definition of recklessness. Because trial counsel failed to object to the instruction, Liti concedes that the issue is unpreserved. He therefore argues that trial counsel rendered ineffective assistance by failing to ensure that the jury instructions were correct.[3]

¶11    To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that counsel's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. This showing requires the defendant to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted); *see also State v. Larrabee*, 2013 UT 70, ¶ 19, 321 P.3d 1136. To establish prejudice in an ineffective-assistance-of-counsel claim, the "defendant must show that a reasonable probability

---

3. He also argues that the trial court plainly erred in submitting the instruction to the jury. Due to our disposition of this claim on the basis of ineffective assistance of counsel, we do not evaluate whether the trial court plainly erred.

exists that, but for counsel's error, the result would have been different." *State v. Millard*, 2010 UT App 355, ¶ 18, 246 P.3d 151 (citation and internal quotation marks omitted).

A.     The Jury Instructions Were Incorrect.

¶12     To evaluate whether trial counsel performed deficiently in failing to object to the jury instructions, we must first consider whether those instructions were legally correct. We review jury instructions in their entirety to determine whether the instructions, taken as a whole, fairly instructed the jury about the applicable law. *State v. Stringham*, 957 P.2d 602, 608 (Utah Ct. App. 1998).

¶13     A defendant who "recklessly causes the death of another" is guilty of manslaughter. Utah Code Ann. § 76-5-205(1)(a) (LexisNexis Supp. 2011). The Utah Criminal Code defines what constitutes a reckless mental state:

> A person engages in conduct . . . [r]ecklessly with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 76-2-103(3) (LexisNexis 2008). In this case, the jury was instructed that "[a] person acts recklessly when he is aware of a substantial and unjustifiable risk that his or her conduct will cause a particular result, consciously disregards the risk, and acts anyway." We agree with Liti that this instruction failed to

fairly instruct the jury on the applicable law because it failed to require a jury finding that the defendant's conscious disregard of the risk constituted a "gross deviation" from the standard of care expected of an ordinary person as viewed from the defendant's standpoint.

¶14 We conclude that the plain language of the statute compels this result. When interpreting a statute, we rely first on the statute's plain language as the best evidence of the legislature's intent. *LeBeau v. State*, 2014 UT 39, ¶ 20, 337 P.3d 254. We interpret statutes to give meaning to all parts and to avoid rendering portions of the statute superfluous. *Id.* We also presume that the legislature "used each word advisedly," and thus we "give effect to each term according to its ordinary and accepted meaning." *Id.* (citation and internal quotation marks omitted). Because the jury instruction omitted the second sentence of the statute, we must consider whether the inclusion of the omitted portion would have changed the meaning of the jury instruction. We determine that it would have.

¶15 The first sentence in the statute defines reckless behavior in terms of the defendant's knowledge and disregard of a substantial and unjustifiable risk. Utah Code Ann. § 76-2-103(3). This portion of the statute speaks primarily to the magnitude or type of risk that the defendant's conduct imposes on another. The second sentence of the statute addresses whether the defendant's decision to disregard that risk constitutes a "gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." *Id.* This portion of the statute asks the jury to measure the defendant's decision to ignore the risk against an objective standard of behavior we would expect of a reasonable person similarly situated. This second inquiry is therefore analytically distinct from the first, and its omission represents a significant change to the statutory standard. The legislature's use of the word "must" indicates that a finding of a "gross

deviation" is necessary to a finding that a defendant acted recklessly.

¶16    We also find support for this conclusion in our caselaw interpreting the similarly structured criminal-negligence statute. That statute has a comparable "gross deviation" requirement:

> A person engages in conduct . . . [w]ith criminal negligence or is criminally negligent with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise in all the circumstances as viewed from the actor's standpoint.

*Id.* § 76-2-103(4). Our supreme court has explained that this statute "requires proof that [the] defendant's conduct place[d] another at risk; that the risk [was] substantial and unjustifiable; and that failure to perceive the risk constitute[d] a gross deviation from the reasonable [person] standard." *State v. Chavez*, 605 P.2d 1226, 1227 (Utah 1979) (emphasis omitted). Our caselaw recognizes that the nature of the risk involved in both criminal negligence and recklessness is the same; "the only difference between the two is whether the defendant was aware of that risk." *State v. Boss*, 2005 UT App 520, ¶ 14 n.2, 127 P.3d 1236. But "[i]n both cases, a defendant's conduct must be 'a gross deviation' from the standard of care exercised by an ordinary person." *State v. Standiford*, 769 P.2d 254, 267 (Utah 1988). Thus, our caselaw confirms what the plain language of the statute reveals: to obtain a conviction on a theory of reckless manslaughter, the State must prove that the defendant's conduct in disregarding the risk of death was "'a gross deviation' from

the standard of care exercised by an ordinary person" in the defendant's circumstances. *Id.* The omission of the gross-deviation element in the jury instructions here constitutes error.

¶17 The State opposes this conclusion by arguing that "the 'gross deviation' language would have added little, if anything, to this definition under the circumstances of this case." The State asserts that "there is very little daylight—if any—between consciously disregarding a risk that is 'substantial and unjustifiable' and grossly deviating from the standard of care required under the existing circumstances." Thus, the State reasons, "the 'gross deviation' language adds little or nothing to the requirement of consciously disregarding a 'substantial and unjustifiable' risk of death." However, the State's argument asks us to conclude that the second half of the statute defining reckless behavior is, essentially, superfluous. Given the standards by which we interpret statutes, we cannot accept this invitation and must presume that the legislature intended for each portion of the statute to impose a meaningful requirement. *See LeBeau*, 2014 UT 39, ¶ 20. We therefore conclude that the jury instructions in this case failed to correctly state the law with respect to the mental-state finding required to convict Liti of reckless manslaughter.

B.     Trial Counsel Performed Deficiently.

¶18 Having concluded that the jury instructions failed to correctly state the law, we must next consider whether trial counsel performed deficiently by not objecting to the erroneous instructions. In evaluating trial counsel's performance, "we give trial counsel wide latitude in making tactical decisions and will not question such decisions unless there is no reasonable basis supporting them." *State v. Crosby*, 927 P.2d 638, 644 (Utah 1996). However, absent some tactical explanation, defense counsel's "failure to object to a jury instruction that [does] not alert the jury to every element of the crime with which his client was

charged" constitutes deficient performance. *State v. Eyre*, 2008 UT 16, ¶ 19, 179 P.3d 792.

¶19    As discussed above, the jury instruction defining the mens rea for reckless manslaughter omitted the requirement that the State prove that the defendant's conduct was a "gross deviation" from the care exercised by a reasonable person. We conclude that trial counsel should have objected to this legally erroneous jury instruction because it failed to charge the jury with finding every element necessary to convict Liti of reckless manslaughter. *See id.*

¶20    The State argues that trial counsel "could have . . . reasonably decided not to ask for the 'gross deviation' language because it was not material to the defense theory of self-defense." The State contends that trial counsel could have reasonably concluded that "exploring a subtle nuance of recklessness would risk distracting the jury from [the self-defense] narrative and lessen Liti's chances of a full acquittal." However, though trial counsel focused on self-defense in closing argument, Liti's own testimony was that the shooting was an accident. Thus, even though trial counsel's principal argument may have been self-defense, given the testimony presented, "[t]here is only upside in a complete statement of the requirement of mens rea" with respect to the reckless-manslaughter charge. *See State v. Barela*, 2015 UT 22, ¶ 27, 349 P.3d 676. We therefore conclude that "no reasonable lawyer would have found an advantage in understating the mens rea requirement" of reckless manslaughter, *see id.*, and we further conclude that trial counsel performed deficiently by failing to object to the erroneous instruction.

C.    Trial Counsel's Deficient Performance Prejudiced Liti.

¶21    To merit reversal of his conviction, Liti must also demonstrate that his defense was prejudiced by trial counsel's

deficient performance—that there is a reasonable probability of a more favorable result absent the error. *State v. McNeil*, 2013 UT App 134, ¶ 42, 302 P.3d 844. We conclude that trial counsel's deficient performance prejudiced Liti's defense.

¶22 The jury convicted Liti of manslaughter without indicating whether it did so under a theory of recklessness or imperfect self-defense. Given the evidence presented, it is reasonably likely that the jury's verdict was based at least in part on a determination that Liti acted recklessly.[4] The omission of the gross-deviation requirement therefore allowed the jury to convict Liti without considering whether the State had proved everything necessary to obtain a reckless-manslaughter conviction.

¶23 The State argues that the omitted language would have made no difference to the verdict because Liti "threatened to shoot the victim numerous times and admitted pulling out a gun, cocking it, and putting his finger on or near the trigger during a fight." The State contends this is "textbook recklessness." We agree that Liti's drawing a gun, arming it, and exercising poor trigger discipline created a substantial and unjustifiable risk of death to another—a conclusion borne out by the jury's verdict on the manslaughter charge when instructed to find only those elements. But we cannot conclude that the evidence in this case necessarily proves beyond a reasonable

---

4. Indeed, while our review of the record discloses some evidence from which a jury could have conceivably concluded that Liti reasonably believed "lethal force was 'necessary to prevent death or serious bodily injury,'" we see no evidence that Liti "reasonably but incorrectly believed his actions were legally justifiable" such that a jury could have found imperfect self-defense. *See State v. Lee*, 2014 UT App 4, ¶¶ 38–40, 318 P.3d 1164 (Voros, J., concurring).

doubt that Liti's conduct was a "gross deviation" from what a reasonable person may have done under the circumstances. Given the evidence before the jury, particularly if the jury believed the testimony that Victim himself was armed, we cannot confidently say that the jury would necessarily have concluded that Liti's conduct in drawing a loaded gun during the fight was a gross deviation from what was reasonable under the circumstances. We therefore conclude that there is a reasonable likelihood that a properly instructed jury would have returned a verdict more favorable to Liti.

## II. The Trial Court Erred in Finding That Liti Was a Category I Restricted Person.

¶24    Liti next argues that the trial court erred in finding that he was a Category I restricted person when the jury found only that he was a Category II restricted person. The State concedes that the trial court erred and asks us to vacate Liti's conviction for unlawful possession of a firearm as a Category I restricted person and order his conviction entered in accordance with the jury's verdict.

¶25    Under Utah law, a restricted person may not legally possess a firearm. Utah Code Ann. § 76-10-503 (LexisNexis 2008). The degree of conviction for possession of a firearm by a restricted person varies by whether the defendant is a Category I or Category II restricted person: A Category I restricted person who possesses a firearm is guilty of a second-degree felony. *Id.* § 76-10-503(2). A Category II restricted person who possesses a firearm is guilty of a third-degree felony. *Id.* § 76-10-503(3). Here, the jury found that Liti possessed a firearm and that he was an unlawful user or possessor of a controlled substance. These findings are sufficient to support a conviction for possession of a firearm by a Category II restricted person. *Id.* § 76-10-503(1)(b)(iii). The jury's findings are not, however, sufficient to

support Liti's conviction as a Category I restricted person. *Id.* § 76-10-503(1)(a).

¶26 Nevertheless, the trial court found that Liti was a Category I restricted person because the State had provided the court, but not the jury, with evidence that Liti was on probation for a prior felony offense at the time of the shooting. *See id.* § 76-10-503(1)(a)(ii). However, a defendant has a federal due process right to have the jury find every element of an offense with which he is charged. *United States v. Gaudin*, 515 U.S. 506, 511 (1995). Thus, "[e]lements of a crime must be charged in an indictment and proved to a jury beyond a reasonable doubt." *United States v. O'Brien*, 560 U.S. 218, 224 (2010). The prior conviction here is an element of the offense because possession of a firearm is not a crime in the absence of a finding that a defendant is a restricted person. *See State v. Higginbotham*, 917 P.2d 545, 550 (Utah 1996).

¶27 Accordingly, the trial court erred in finding that Liti was a Category I restricted person—a question that Liti had a constitutional right to try to a jury. Liti was prejudiced by that error because it resulted in his conviction for an offense greater than that supported by the jury's findings. We agree with Liti and the State that Liti's conviction for unlawful possession of a firearm by a Category I restricted person cannot stand. We therefore vacate that conviction, and we direct the trial court on remand to enter Liti's conviction for possession of a firearm by a Category II restricted person—a third-degree felony—as found by the jury.

CONCLUSION

¶28 The jury instruction defining the reckless mental state for Liti's manslaughter conviction failed to charge the jury with finding that Liti's conduct was a "gross deviation" from what a

reasonable person would do under the circumstances. Trial counsel rendered ineffective assistance by failing to object to the erroneous instruction. The trial court erred in finding that Liti was a Category I restricted person, because the question should have been presented to the jury. We therefore reverse Liti's conviction for manslaughter, vacate his conviction for possession of a firearm by a Category I restricted person, and remand to the trial court for a new trial on the homicide charge and entry of a conviction for possession of a firearm by a Category II restricted person.

———————