2016 UT App 59

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
YESHA ANTHONY GARCIA,
Appellant.

Opinion
No. 20140203-CA
Filed March 31, 2016

Third District Court, Salt Lake Department
The Honorable Robin W. Reese
No. 101904923

John B. Plimpton and Teresa L. Welch, Attorneys
for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and KATE A. TOOMEY concurred.

CHRISTIANSEN, Judge:

¶1　　Yesha Anthony Garcia appeals from his convictions for
attempted murder and possession of a firearm by a restricted
person. We reverse in part, affirm in part, and remand the case
for further proceedings consistent with this opinion.

### BACKGROUND

¶2　　Garcia was charged with two counts of attempted
murder, two counts of felony discharge of a firearm, one count
of possession or use of a firearm by a restricted person, and one
count of possession of drug paraphernalia, all stemming from an

incident in which Garcia shot at his cousin and his cousin's girlfriend's daughter as they drove by Garcia's house.

¶3    Garcia, a drug dealer, believed that his cousin (Cousin) and Cousin's girlfriend's daughter (K.C.) had stolen cocaine from him. Garcia went looking for Cousin and ran into Cousin's girlfriend (Girlfriend) and K.C. at an apartment Garcia was renting out. Garcia assaulted Girlfriend and K.C. "in a rage."

¶4    Garcia believed that Cousin would "seek revenge" for the assault. The day after the assault on Girlfriend and K.C., Garcia waited for Cousin to retaliate. Cousin and K.C. drove by Garcia's house, turned around, and then drove by again. During the second pass, Garcia came out of his house and fired four shots at Cousin's vehicle. Neither Cousin nor K.C. were struck by the bullets, but one of the bullets hit the vehicle, chipping the paint. K.C. testified at trial that they had driven past Garcia's house to obtain Garcia's address for the purpose of reporting the previous day's assault to the police. In contrast, Garcia testified that he believed Cousin was driving by his house to seek revenge and that the second time Cousin drove by, Garcia was justified in protecting himself and his property from an attack.

¶5    At trial, Garcia asserted the affirmative defense of self-defense to the charges of attempted murder. The evidence presented to support this assertion included the following: (1) Garcia believed Cousin would seek revenge for Garcia's attack on Girlfriend and K.C., (2) Cousin had a history of violence and Garcia understood Cousin's history and character, and (3) there were long-running feuds between Garcia and Cousin. In addition, Detective O'Camb, who interviewed Garcia after his arrest, testified at trial that Garcia admitted during the interview that he was so worried about revenge from Cousin that he took precautionary measures by sending his live-in girlfriend away and by not allowing her nieces and nephews over to his house on the night that Garcia thought Cousin would attack. Garcia believed that Cousin would seek revenge either by throwing a Molotov cocktail at his house (which Garcia stated in the police

interview) or by "coming for him" with a gun (to which he testified at trial).

¶6     At the end of the State's case, Garcia's trial counsel (Trial Counsel) moved for a directed verdict. With regard to the charge of restricted person in possession of a firearm, Trial Counsel argued that the evidence presented at trial was insufficient to support a finding that Garcia was an unlawful drug user. Trial Counsel argued that no evidence had been presented demonstrating that Garcia was "currently using" drugs as Trial Counsel argued was required to be proved under the statute. The trial court granted Garcia's motion on the charge of possession of drug paraphernalia, but declined to direct a verdict on the remaining charges.

¶7     Before the jury instructions were read to the jury, Trial Counsel requested a jury instruction on the lesser-included offense of attempted manslaughter based on recklessness. The State opposed Trial Counsel's argument but conceded that "there is some evidence upon which [the State] believe[d] that the Defense could argue" for a defense of imperfect self-defense and that the State "[thought] that [an] instruction [on imperfect self-defense] should come in." Trial Counsel was then instructed to prepare an instruction on the lesser-included offense of attempted manslaughter based upon imperfect self-defense. The instruction stated, "Before you can find the Defendant guilty of the lesser-included offense of ATTEMPTED MANSLAUGHTER, . . . you must find beyond a reasonable doubt [that the] affirmative defense of imperfect-self defense does not apply." The jury found Garcia guilty of one count of attempted murder, both counts of discharge of a firearm, and the count of possessing a firearm as a restricted person.[1] Garcia appeals.

---

1. The jury acquitted Garcia of the charge of attempted murder relating to K.C.

ISSUES AND STANDARDS OF REVIEW

¶8 Garcia contends that Trial Counsel was ineffective for failing to object to a jury instruction "that told the jury to convict [Garcia] of lesser-included attempted manslaughter only if imperfect self-defense does not apply beyond a reasonable doubt." "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law, which we review for correctness." *State v. Fowers*, 2011 UT App 383, ¶ 15, 265 P.3d 832 (citation and internal quotation marks omitted).

¶9 Garcia also contends that the evidence presented at trial was insufficient to sustain his conviction of possession of a firearm by a restricted person. "When a defendant challenges a jury verdict for insufficiency of the evidence, we review the evidence and all inferences which may be reasonably drawn from it in the light most favorable to the verdict." *State v. Noor*, 2012 UT App 187, ¶ 4, 283 P.3d 543 (citation and internal quotation marks omitted). "We will reverse the jury's verdict only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Id.* (citation and internal quotation marks omitted). To the extent that this claim is unpreserved, Garcia argues that this court should nevertheless review it because it is a result of ineffective assistance by his trial counsel.

ANALYSIS

I. Jury Instruction on Attempted Manslaughter

¶10 Garcia contends that Trial Counsel was ineffective for submitting and then not objecting to an incorrect jury

instruction.[2] We first consider whether the attempted-manslaughter instruction was erroneous.

A.    Instruction 26 Misstated the Law.

¶11    Garcia contends that Trial Counsel was ineffective for failing to object to the instruction on attempted manslaughter (Instruction 26). Garcia argues that Instruction 26 was erroneous because it "incorrectly instructed the jury that it needed to find beyond a reasonable doubt that imperfect self-defense did 'not apply' in order to convict [Garcia] of attempted manslaughter." Thus, he argues, "the jury was effectively instructed that the elements of attempted murder and attempted manslaughter are the same."

¶12    To secure a conviction for attempted murder, the State must prove beyond a reasonable doubt that a defendant attempted to cause the victim's death. *See, e.g.*, *State v. Garcia*, 2001 UT App 19, ¶ 11, 18 P.3d 1123. A defendant is entitled to acquittal if there is any basis in the evidence sufficient to create a reasonable doubt that he or she committed the offense. *See id.* ¶ 12. If there is any basis in the evidence for the jury to reasonably conclude that a defendant acted in self-defense, that defendant is entitled to have the jury instructed as to self-defense. *Id.* ¶ 8. "The defendant's burden of proof [to receive a self-defense instruction] is quite limited"; he or she "need not even prove the defense by a mere preponderance." *Id.* (emphasis, brackets, ellipsis, citation, and internal quotation marks omitted).

¶13    Self-defense may be perfect or imperfect. Perfect self-defense bars conviction when a defendant's use of force was

---

2. We note that the submission of an incorrect jury instruction likely amounts to waiver of the right to appeal the correctness of the jury instruction. However, we understand Garcia's argument to incorporate a contention that any such invited error by counsel constitutes ineffective assistance at trial.

legally justified. *See* Utah Code Ann. § 76-2-402 (LexisNexis 2012). Imperfect self-defense reduces a murder charge to manslaughter, or an attempted murder charge to attempted manslaughter, when a defendant acts "under a reasonable belief that the circumstances provided a legal justification or excuse for the conduct although the conduct was not legally justifiable or excusable under the existing circumstances." *See id.* § 76-5-203(4).

¶14    Here, Garcia argued to the jury that he had acted in self-defense. The jury was therefore given an instruction on self-defense (Instruction 20). Instruction 20 correctly informed the jury as to the application of both perfect and imperfect self-defense. The jury was also given an instruction that further explained imperfect self-defense (Instruction 24). These two instructions correctly explained the law—that unless the jury found beyond a reasonable doubt that Garcia had not acted in circumstances amounting to imperfect self-defense, the jury could at most convict him of attempted manslaughter. However, the instruction submitted by Trial Counsel at the concession of the State, Instruction 26, incorrectly stated that the jury should convict Garcia of attempted manslaughter—thus giving Garcia the benefit of an imperfect self-defense finding—if the jury concluded that imperfect self-defense did *not* apply. In its entirety, Instruction 26 stated:

> Before you can find the Defendant guilty of the lesser-included offense of ATTEMPTED MANSLAUGHTER, under Count I of the Information, you must find beyond a reasonable doubt each of the following elements:
> 1.  That on or about June 30, 2010;
> 2.  In Salt Lake County, State of Utah;
> 3.  The Defendant, Yesha Anthony Garcia;
> 4.  Attempted to cause the death of [Cousin]; and
> 5.  The affirmative defense of imperfect-self defense does not apply.

As a result, the jury instructions regarding imperfect self-defense and attempted manslaughter were in direct conflict. Instructions 20 and 24 both correctly stated that even if the jury found that the State had proved all the elements of attempted murder, it could convict Garcia only of attempted manslaughter "if the State *has not disproved* the affirmative defense of imperfect self-defense," whereas Instruction 26 incorrectly stated that in order to convict Garcia of attempted manslaughter, the jury had to find that the State *had disproved* the affirmative defense of imperfect self-defense. (Emphasis added.)

¶15    The fact that Instructions 20 and 24 correctly state the law on imperfect self-defense does not remedy or cure Instruction 26's error. *See State v. Green*, 6 P.2d 177, 183 (Utah 1931) ("'[W]here instructions are in irreconcilable conflict, or so conflicting as to confuse or mislead the jury, the rule requiring instructions to be read together has no application.'" (citation omitted)); *State v. Campos*, 2013 UT App 213, ¶ 64, 309 P.3d 1160 ("[W]e cannot say that the jury was fairly instructed on the applicable law" where there existed a "direct conflict between [an] imperfect self-defense instruction and the verdict form."); *see also State v. Lawson*, 688 P.2d 479, 481 (Utah 1984) (noting that the jury instructions should be considered together "in light of the total evidence before the jury" to determine whether "the jury was properly instructed"). In this case, the only practical difference between conviction for attempted murder and for attempted manslaughter was whether the affirmative defense of imperfect self-defense applied.[3] Due to the error in Instruction 26, the jury was erroneously provided with two slightly different yet substantively identical instructions outlining the elements of

---

3. If it did apply, the State had failed to meet its burden of disproving imperfect self-defense beyond a reasonable doubt and Garcia should have been convicted of attempted manslaughter. If it did not apply, the State had satisfied that burden, and Garcia would have been properly convicted of attempted murder.

attempted murder and was given no instruction accurately outlining the elements of attempted manslaughter. *See State v. Johnson*, 2014 UT App 161, ¶ 23, 330 P.3d 743 (stating that the instructions listing the elements for murder and the lesser-included offense of homicide by assault were identical, and therefore the jury was erroneously provided with "substantively identical instructions outlining the elements of criminal homicide and no instruction accurately outlining the elements of homicide by assault"), *cert. granted*, 343 P.3d 708 (Utah Jan. 9, 2015).

¶16    In short, Instruction 26 misstated the law regarding the application of a defense about which the State had conceded Garcia was entitled to have the jury instructed.[4] Logically, entitlement to an instruction is entitlement to a correct instruction. And dueling instructions—in conflict as to how the jury should consider the defense—cannot satisfy that entitlement. *See Green*, 6 P.2d at 183–84 ("'[T]he giving of inconsistent instructions is error and sufficient ground for a reversal of the judgment, because, after verdict, it cannot be told

---

4. On appeal, the State argues that because "neither [Garcia] nor the State presented any evidence at trial to support an imperfect self-defense claim," Garcia was not entitled to an imperfect self-defense instruction. However, the quantum of evidence needed to trigger entitlement to a self-defense instruction is "quite limited." *State v. Garcia*, 2001 UT App 19, ¶ 8, 18 P.3d 1123; *see also State v. Torres*, 619 P.2d 694, 695 (Utah 1980) (noting that a defendant is entitled to an instruction "if there is any reasonable basis in the evidence to justify it"). Although we are skeptical as to the viability of an imperfect-self-defense claim under these facts, the State conceded at trial that "there is some evidence upon which [the State] believe[s] that the defense could argue" imperfect self-defense and that the State thought "that instruction should come in." Not only did the State agree to an instruction on imperfect self-defense, it suggested that the jury be so instructed in the first place.

which instruction was followed by the jury, or what influence the erroneous instruction had on their deliberations.'" (citation omitted)). We conclude that the instructions failed to fairly instruct the jury on the applicable law because the instructions failed to distinguish between the elements of attempted murder and the elements of attempted manslaughter and because the instructions given to the jury contradicted one another.[5]

B.    Trial Counsel Performed Ineffectively by Proposing Instruction 26.

¶17    Having concluded that the jury instructions failed to correctly and fairly state the law, we must next consider whether Trial Counsel performed deficiently by proposing an incorrect jury instruction.

¶18    To succeed on a claim of ineffective assistance of counsel, a defendant must show both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish that counsel's performance was deficient, a defendant "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "To establish the prejudice prong of an ineffective assistance of counsel claim, the defendant must show that a reasonable probability exists that,

---

5. We note that Instruction 26 also misstates the burden of proof. It states that, to convict Garcia of attempted manslaughter, the jury must first find that, among other things, "beyond a reasonable doubt . . . [t]he affirmative defense of imperfect-self defense does not apply." As we have explained, the word "not" is in error. But it is also true that once a defendant has raised imperfect self-defense, the defendant is entitled to the benefit of that defense unless the State has proved beyond a reasonable doubt that the defendant's actions did not amount to imperfect self-defense. Thus, the jury need not find that the defense *applies* beyond a reasonable doubt.

but for counsel's error, the result would have been different." *State v. Lee*, 2014 UT App 4, ¶ 13, 318 P.3d 1164 (citation and internal quotation marks omitted); *accord Strickland*, 466 U.S. at 694.

¶19   To show that Trial Counsel's assistance "fell below an objective standard of reasonableness," Garcia must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 687–89 (citation and internal quotation marks omitted).

¶20   Trial Counsel drafted and submitted Instruction 26. The State now argues that Garcia's "theory at trial, however, was never imperfect self-defense" and "the evidence [does not] support such a defense." The State asserts that, as a result, Trial Counsel could have reasonably decided that "any imperfect self-defense instructions were superfluous and not worthy of great attention." However, at trial, the State conceded that the evidence presented at trial merited an instruction on imperfect self-defense and also stated that "that instruction should come in." We can see no conceivable tactical basis for Trial Counsel to respond to that concession by proposing a legally erroneous instruction.[6] *See Lee*, 2014 UT App 4, ¶ 27.

¶21   Trial Counsel should not have submitted Instruction 26 as written, because it failed to set forth the actual elements the jury needed to find in order to convict Garcia of attempted manslaughter. *See State v. Liti*, 2015 UT App 186, ¶ 19, 355 P.3d 1078; *see also Lee*, 2014 UT App 4, ¶ 27 (stating that a trial counsel

---

6. The State's position—that it was a reasonable tactical decision for Trial Counsel, after the State conceded that Garcia was entitled to an imperfect self-defense instruction, to change course, opt to forgo an imperfect-self-defense claim "in favor of an all-or-nothing self-defense claim," and prepare an inaccurate instruction on the elements of attempted manslaughter—is simply untenable.

"had a duty to object to such a fundamentally flawed instruction and to ensure that the jury was properly instructed on the correct burden of proof," where an instruction incorrectly placed the burden of an affirmative defense on the defendant). We conclude that Trial Counsel performed deficiently in this regard.

¶22　We next consider whether the error caused prejudice, i.e., whether "a reasonable probability exists that, but for counsel's error, the result would have been different." *Lee*, 2014 UT App 4, ¶ 13 (citation and internal quotation marks omitted); *accord Strickland*, 466 U.S. at 694.

¶23　The Utah Supreme Court has recognized that "an accurate instruction upon the basic elements of an offense is essential. Failure to so instruct constitutes reversible error. Thus, the failure to give this [accurate] instruction can never be harmless error." *State v. Bluff*, 2002 UT 66, ¶ 26, 52 P.3d 1210 (citations and internal quotation marks omitted). Because Instruction 26 "effectively mirrored the elements" of the attempted murder instruction, "the jury may have believed that the two instructions required it to make essentially the same factual determinations and that it did not matter which offense was selected." *See State v. Johnson*, 2014 UT App 161, ¶ 27, 330 P.3d 743 (internal quotation marks omitted), *cert. granted*, 343 P.3d 708 (Utah Jan. 9, 2015). "[T]he choice is not a choice when, as instructed, there is no real difference between" attempted murder and attempted manslaughter. *See id.*

¶24　The error in Instruction 26 left the jury "with the option of either 'convicting the defendant of [the charged offense], or acquitting him outright.'" *See id.* (alteration in original) (quoting *Keeble v. United States*, 412 U.S. 205, 213 (1973)). Under the instructions given, the jury was precluded from finding Garcia guilty of attempted manslaughter. If the jury found that the State had failed to disprove Garcia's imperfect self-defense claim, the instructions required it to convict him of both attempted murder and attempted manslaughter. Additionally, the instructions as a whole directed the jury to convict Garcia of attempted manslaughter both if the defense of imperfect self-defense

applied *and* did not apply. Thus, the jury was caught in a Catch-22; in order to convict Garcia of the lesser offense, the jury had to find all the elements of the greater offense. But if the jury found all the elements of the greater offense, it was required to convict Garcia of the greater offense rather than the lesser offense. And "when it cannot be told which instruction was followed by the jury, or what influence the erroneous instruction had on their deliberations, the giving of inconsistent instructions is error and sufficient ground for a reversal of the judgment." *State v. Campos*, 2013 UT App 213, ¶ 65, 309 P.3d 1160 (citation and internal quotation marks omitted). Trial Counsel's failure to object or otherwise provide an accurate instruction on attempted manslaughter effectively removed from the jury's consideration the option of convicting Garcia of the lesser-included offense. Moreover, because Instruction 26 was in direct conflict with Instructions 20 and 24, there can be no confidence that the jury understood what impact a determination of imperfect self-defense should have had on the verdict.

¶25   Odd though it may seem on this record, Trial Counsel, the State, and the trial court all agreed that Garcia was entitled to an instruction on imperfect self-defense. A defendant is entitled to an imperfect self-defense instruction if the evidence provides "[a] reasonable basis for the jury to conclude" that the defense applies. *See State v. Garcia*, 2001 UT App 19, ¶ 8, 18 P.3d 1123. We will not now second-guess the assessment made by the parties and the trial court that the evidence here did so. And because there was a reasonable basis for the jury to conclude that imperfect self-defense applied, there is necessarily "a reasonable probability . . . that, but for counsel's error, the result would have been different." *State v. Lee*, 2014 UT App 4, ¶ 13, 318 P.3d 1164 (citation and internal quotation marks omitted).

¶26   We hold that Instruction 26 was erroneous, that Trial Counsel performed deficiently by introducing the instruction, and that Trial Counsel's deficient performance prejudiced

Garcia. Accordingly, we vacate Garcia's conviction for attempted murder.[7]

## II. Sufficiency of the Evidence

¶27 Garcia argues that there was insufficient evidence to support his conviction for possession of a firearm by a restricted person because his statement that he took "a lot of cocaine like sometimes" was insufficient to support an inference that he was an unlawful user of a controlled substance, and thus that he could not properly be convicted of possession of a firearm by a restricted person.

### A. Garcia's Statement was Corroborated.

¶28 Garcia first argues that the statement was an uncorroborated out-of-court confession, and that "[n]o defendant can be convicted solely on the basis of an uncorroborated out-of-court confession." *See State v. Mauchley*, 2003 UT 10, ¶ 50, 67 P.3d 477. However, this issue is unpreserved. *See Wohnoutka v. Kelley*, 2014 UT App 154, ¶¶ 3–4, 330 P.3d 762 (explaining that issues not brought to the trial court's attention are generally considered waived). While Garcia filed a motion for a directed verdict at the close of the State's case, he argued only that he could not be convicted of this charge

---

7. Garcia also contends that Trial Counsel performed deficiently by failing to request a jury instruction on arson and aggravated arson. Garcia argues that arson and aggravated arson are forcible felonies and that he was entitled to use deadly force to defend against arson or aggravated arson. *See* Utah Code Ann. § 76-2-402(1)(a), (4)(a) (LexisNexis 2012). Because this contention seeks vacatur of Garcia's attempted-murder conviction and we have vacated that conviction on other grounds, we need not address it. Similarly, we need not address Garcia's cumulative-error claim, which also sought vacatur of the attempted-murder conviction.

because he was not actually under the influence of cocaine at the relevant time, and thus was not "an unlawful user" of a controlled substance.

¶29 Garcia also raises this argument under the ineffective assistance of counsel exception to the preservation rule. To demonstrate ineffective assistance of counsel, Garcia must show that Trial Counsel's performance was deficient and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Garcia asserts that Trial Counsel's performance was deficient because "there was no 'conceivable tactical basis for [Trial Counsel's] failure to move for a directed verdict'" on this argument. Because both deficient performance and prejudice are requisite elements of a claim of ineffective assistance of counsel, failure to prove either element necessarily defeats the claim. *Id.* at 697; *State v. Hards*, 2015 UT App 42, ¶ 18, 345 P.3d 769.

¶30 Under *Mauchley*, "a defendant may not be convicted unless there exists independent evidence of the crime, a corroborated confession, or a combination of both."[8] *Mauchley*, 2003 UT 10, ¶ 61. "[C]orroboration of the confession itself is sufficient to sustain a conviction." *Id.* ¶ 76. "[O]ne available mode of corroboration is for the independent evidence to bolster

---

8. *State v. Mauchley*, 2003 UT 10, 67 P.3d 477, dealt with whether a confession could be admitted into evidence, not whether a confession is sufficient evidence for conviction. Garcia filed a motion challenging the admissibility of his confession based on an alleged lack of *Miranda* warnings, which the court denied. Thus, a directed-verdict motion based on that aspect of *Mauchley* would likely have been futile, because the confession had already been admitted. *See State v. Kelley*, 2000 UT 41, ¶ 26, 1 P.3d 546 (concluding that trial counsel was not ineffective for failing to raise futile objections or arguments). But a motion to dismiss based on a *Mauchley* challenge to the trustworthiness of the confession may not have been futile.

the confession itself . . . ." *Smith v. United States*, 348 U.S. 147, 156 (1954). The State may establish a confession's trustworthiness "with other evidence typically used to bolster the credibility and reliability of an out-of-court statement." *Mauchley*, 2003 UT 10, ¶ 51. "Factors used in other areas of the law to bolster the credibility and reliability of an out-of-court statement include the following: evidence as to the spontaneity of the statement; the absence of deception, trick, threats, or promises to obtain the statement; the defendant's positive physical and mental condition, including age, education, and experience; and the presence of an attorney when the statement is given." *Id.* ¶ 52.

¶31    Here, Garcia's statement that he "[did] a lot of cocaine like sometimes" was spontaneous. When Garcia made this statement regarding his drug use during the interview, Garcia and Detective O'Camb were discussing what Garcia was doing in his house the night before the shooting. Garcia told Detective O'Camb that he carried his gun on his person throughout his house that night because he was worried Cousin would come by his house, but also that he would do the same thing "when [he is] off cocaine." Detective O'Camb responded, "Yeah. You're not normally like that," but Garcia diverted the conversation back to his drug use. Garcia stated, "Yeah, when I'm off cocaine, too, I get real paranoid, I always think the cops gonna run in my shit. So, uh, yeah, 'cause I do a lot of cocaine like sometimes." And when Detective O'Camb later questioned Garcia about his drug use as a drug dealer, stating to Garcia that "it's odd that you use, because a lot of people that really got skills don't use at all," Garcia responded, "Yeah, nah, it's just, my heart and soul is into this shit, man." These facts and circumstances surrounding Garcia's drug use also corroborate the confession. Garcia admitted that he was a drug dealer, that he dealt cocaine, and that he believed Cousin had stolen cocaine from him. He also stated that he becomes paranoid when he is not using cocaine. Garcia has not challenged this corroborating evidence. Garcia also has not stated that he was deceived or threatened in any way into making these statements, other than an argument in his reply brief in which he argues generally that the circumstances

in videos are not always what they appear to be (citing terrorists' propaganda videos of hostages).

¶32   Additionally, if a confession is trustworthy with respect to one charge, it is strong evidence that the confession is trustworthy with respect to other charges. *United States v. Singleterry*, 29 F.3d 733, 737–38 (1st Cir. 1994). Garcia suggests that the *Singleterry* rule only applies to "closely connected" charges, but he offers no case support that limits *Singleterry* in such a way.[9]

¶33   Here, Garcia's confession was trustworthy as to the other charges. For instance, Garcia also confessed to shooting at Cousin. Garcia stated that Cousin pulled up to his house and was "just like looking, like mad-dogging and shit." Garcia stated that he then grabbed his gun and shot until he had emptied the clip of his gun.[10] Thus, Trial Counsel could reasonably have determined that moving for a directed verdict on the unlawful possession charge would have been futile because the cocaine-use portion of Garcia's confession was corroborated by the consistency of the remainder of the confession regarding his unlawful discharge of a weapon and Garcia's testimony at trial that he had a gun and was protecting himself from Cousin. Failing to make a futile motion is not deficient performance. Thus, Garcia has failed to demonstrate that Trial Counsel performed deficiently in this regard.

---

9. We note the reasonably close connection between the charges of unlawfully possessing a firearm and unlawfully discharging a weapon.

10. Garcia stated that he emptied the clip of the gun, but he also stated in the interview that the gun was a revolver. This discrepancy does not call the general trustworthiness of his confession into doubt.

B.    The Statute is Not Unconstitutionally Vague.

¶34    Garcia next argues that the phrase "unlawful user" is unconstitutionally vague, and should be construed to mean "one who is actually using a controlled substance at the time he or she is in possession of the firearm." This argument is unpreserved because Trial Counsel did not raise a constitutional argument at trial, and thus, Garcia claims that Trial Counsel was ineffective for not raising such an argument.[11] *See State v. Kennedy*, 2015 UT App 152, ¶ 21, 354 P.3d 775 ("The appellant must present the legal basis for her claim to the trial court, not merely the underlying facts or a tangentially related claim."). In support of his argument that Trial Counsel erred by failing to raise this argument to the trial court, Garcia claims that "federal circuits 'generally agree' that a broad interpretation of 'unlawful user' in a federal statute materially identical to [the Utah statute] 'runs the risk of being unconstitutionally vague.'" In response, the State cites cases in which the term "unlawful user" applies so long as there is a temporal nexus between the drug use and the firearm possession.

¶35    Garcia has not demonstrated that he was prejudiced by Trial Counsel's failure to argue that the statute's use of the term "unlawful user" should be interpreted as "current user" to avoid constitutional risks, such as "rendering possession by an 'unlawful user' a status crime," being void for vagueness, and preventing a class of people from their right to bear arms. Garcia points to no cases that limit "unlawful user" to people actually under the influence of a drug at the time they possess a firearm. And he neglects to cite to any cases in which such an argument was successfully made to a court. As noted by the State, "every court to consider [the] federal statute [regarding restricted persons and unlawful users] has affirmed its constitutionality."

---

11. Trial Counsel moved for a directed verdict based on his belief that "unlawful user" meant "current user," but he did not raise any constitutional basis for this argument.

(Citation and internal quotation marks omitted.) Thus, Garcia has failed to adequately support his claim that Trial Counsel's failure to invoke these legal theories "would obligate the trial court to grant" the motion for a directed verdict.

¶36 Alternatively, Garcia appears to claim that Trial Counsel was ineffective for failing to argue that the term "unlawful user" should "mean one who engages in the regular use of a controlled substance over a period of time proximate to or contemporaneous with the possession of the firearm." Garcia has failed to cite any controlling precedent to support his claim that Trial Counsel was deficient in failing to advance this definition.

¶37 The United States Court of Appeals for the Fifth Circuit has noted that cases discussing "unlawful user" tend to focus on the regularity of drug use and temporal proximity between the drug use and the firearm possession. *United States v. Patterson*, 431 F.3d 832, 838–39 (5th Cir. 2005). But even if we were to adopt the narrower definition advocated by Garcia, the trial court's denial of Trial Counsel's motion for a directed verdict mirrors that definition.

¶38 Garcia confessed, "I *do* a lot of cocaine like *sometimes*." (Emphases added.) When explaining his drug use, Garcia stated that his "heart and soul is into this shit, man." He confirmed that he began using cocaine in 2006 and admitted that he was a dealer of cocaine. These statements suggest that he had not given up his cocaine use and that he had used cocaine recently and with some degree of regularity (given that his statements were about present or recent drug use, he did not say that he had stopped using, and he confirmed that he was a drug dealer who also used drugs). In denying the motion for a directed verdict, the trial court stated that "[Garcia's] admissions that he was a user in context as to why he had the gun nearby would be sufficient . . . to allow the jury, if they chose to believe that evidence, to find him guilty." Therefore, the confession satisfies the requirements discussed by *Patterson*, limiting the term "unlawful user" to ensure its compliance with constitutional protections.

¶39   We conclude that Garcia did not receive ineffective assistance of counsel with regard to his conviction for possessing a firearm as a restricted person.

## CONCLUSION

¶40   We vacate Garcia's conviction for attempted murder and affirm his conviction for restricted person in possession of a firearm. We remand to the district court for further proceedings consistent with this opinion.

———————