2018 UT App 62

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MICHAEL ROY PARKINSON,
Appellant.

Opinion
No. 20160237-CA
Filed April 12, 2018

Third District Court, Salt Lake Department
The Honorable Keith A. Kelly
No. 151902837

David M. Corbett, Attorney for Appellant

Sean D. Reyes and Karen A. Klucznik, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

ORME, Judge:

¶1 Defendant Michael Roy Parkinson appeals his convictions for assault against a police officer and failing to respond to an officer's command to stop. Defendant argues that his trial counsel provided ineffective assistance by proposing erroneous jury instructions. Because Defendant has not demonstrated that any such errors were prejudicial, we affirm his convictions.

¶2 Two Murray City detectives, driving in unmarked police vehicles, initiated a traffic stop after Defendant followed the car in front of him too closely and failed to use his turn signal for at

least two seconds before changing lanes.[1] Responding to the emergency lights and siren of the first detective's vehicle, Defendant pulled over. The first detective approached the driver's side of Defendant's vehicle while the second detective positioned himself at the passenger side. Both detectives were dressed in plain clothes, but the second detective had a badge visibly hanging from his neck on a lanyard. The first detective explained why they pulled Defendant over and asked Defendant for his license, registration, and proof of insurance, which Defendant immediately provided.

¶3    While the first detective returned to his vehicle to check Defendant's license, a sergeant arrived at the scene, also in plain clothes and wearing his badge on a lanyard around his neck. The sergeant had called Defendant's parole officer, leaving a message that officers intended to search Defendant's vehicle. When he informed Defendant of his intent to search the vehicle pursuant to Defendant's parole agreement, Defendant disagreed with the officers on whether they had the authority to do so, insisting that only his parole officer could conduct the search. The sergeant then attempted to coax Defendant out of the vehicle, to no avail. During the coaxing, Defendant asked the sergeant, "[W]ho are you, like what's your name?" Defendant testified at trial that the sergeant told him his name and that he worked for Murray City Police.

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶ 2, 10 P.3d 346 (citation and internal quotation marks omitted). Defendant's version of what happened during the traffic stop differs in several respects from the facts as viewed in the light most consistent with the jury's verdict, but "[w]e present conflicting evidence only as necessary to understand issues raised on appeal." *Id.*

¶4    During the sergeant's attempts to get Defendant to exit his vehicle, Defendant repeatedly revved the engine and reached for the gearshift knob. In a final attempt to get Defendant to exit the vehicle, the sergeant placed his hands on Defendant's left hand and shoulder. The first detective returned to Defendant's vehicle and reached over to try and turn off the ignition, but Defendant put the car into drive and "accelerated at a high rate of speed," causing the first detective to grab hold of the steering wheel, forcing the car toward the curb. The driver's side door shut on the sergeant and the first detective, causing them to be dragged along the road. The officers yelled for Defendant to stop, but Defendant continued driving until he went up and over the curb. Dislodged from the car due to the impact with the curb, the first detective's ankle hit the curb and his chest hit the rear door of the vehicle, and both the sergeant and the first detective fell under the vehicle.

¶5    Defendant drove away from the scene. He left his car in a nearby parking lot and departed on foot. He did not call 911 to report that he had been accosted by persons of questionable legitimacy. Instead, he made his way to a friend's house and stayed there for a few days. He was arrested at his home four days after the incident and charged with two counts of assault on a peace officer, a second degree felony, *see* Utah Code Ann. § 76-5-102.4(4) (LexisNexis 2017), and one count of failure to respond to an officer's signal to stop, a third degree felony, *see id.* § 41-6a-210(1)(b)(i) (2014).

¶6    At trial, Defendant's counsel proposed jury instructions on the elements of both crimes. The proposed assault instruction failed to include the statutory element that Defendant acted "with knowledge that the person is a peace officer." *Id*. § 76-5-102.4(2)(a) (2017). Likewise, Defendant's proposed failure-to-respond-to-officer's-signal instruction did not include the mens rea requirements that Defendant "knowingly received a visual or audible sign from a police officer" and that Defendant

"intended to flee or elude a peace officer." *State v. Bird*, 2015 UT 7, ¶¶ 26–27, 345 P.3d 1141 (internal quotation marks omitted) (explaining that these are the mens rea requirements for a violation of Utah Code section 41-6a-210). The State did not point out that either of these instructions was incomplete, and the district court apparently did not notice their deficiency. A jury convicted Defendant on all counts. Defendant appeals.

¶7    Citing *State v. Garcia*, 2016 UT App 59, 370 P.3d 970, *rev'd*, 2017 UT 53, Defendant's primary argument is that "[f]ailing to provide an accurate instruction upon the basic elements of an offense requires reversal." *See id.* ¶ 23. This is a claim that we cannot consider on its own terms because the error was not brought to the attention of the district court and was therefore not preserved for appeal. On the contrary, it was an error invited by Defendant's trial counsel, who submitted the instruction, and we will ordinarily not review invited errors. *See, e.g., State v. Winfield*, 2006 UT 4, ¶ 15, 128 P.3d 1171 (precluding appellate review of an invited error to deter "parties from intentionally misleading the trial court so as to preserve a hidden ground for reversal on appeal") (citation and internal quotation marks omitted).

¶8    But we can consider the matter as it is framed by Defendant's appellate counsel, in the context of an ineffective assistance of counsel claim. *See State v. Johnson*, 2017 UT 76, ¶ 22.[2] "While such a claim necessarily requires the court to look at the

---

2. Defendant's appellate counsel astutely perceived the problems with the deficient jury instructions and has briefed the appeal thoroughly and effectively. But Defendant is dissatisfied with appellate counsel's performance and has filed several motions seeking the appointment of new counsel. We are at a loss to understand Defendant's dissatisfaction, and we deny Defendant's latest motion for the appointment of new counsel.

substantive issue the defendant argues his counsel should have raised, and whether the substantive issue had any merit, the substantive issue is only viewed through the lens of counsel's performance." *Id.* We therefore consider only the issue of whether Defendant's trial counsel provided constitutionally ineffective assistance by proposing jury instructions that failed to include the culpable mental state required for an assault of a peace officer and failure to stop or respond to an officer's command. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *Layton City v. Carr*, 2014 UT App 227, ¶ 6, 336 P.3d 587 (brackets, citation, and internal quotation marks omitted).

¶9     To prevail on an ineffective assistance of counsel claim, Defendant "must show: (1) that counsel's performance was objectively deficient, and (2) a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. But we "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland v. Washington*, 466 U.S. 668, 697 (1984). On the contrary, we can consider prejudice first. And because Defendant cannot demonstrate prejudice, as we discuss below, we need not reach the issue of whether trial counsel's performance was objectively deficient, although we note that the State essentially concedes that it was.

¶10     Defendant argues that failure to provide an accurate instruction on the basic elements of a crime cannot be harmless error and invariably requires reversal. We recognize that there are a number of cases, outside the ineffective-assistance-of-counsel context, presuming that such an error "can never be harmless" and constitutes clear error, requiring reversal. *See*

*State v. Jones*, 823 P.2d 1059, 1061 (Utah 1991). *Accord American Fork v. Carr*, 970 P.2d 717, 720 (Utah Ct. App. 1998); *State v. Stringham*, 957 P.2d 602, 608 (Utah Ct. App. 1998); *State v. Souza*, 846 P.2d 1313, 1320 (Utah Ct. App. 1993).

¶11    Our decision in *State v. Liti*, 2015 UT App 186, 355 P.3d 1078, was one of the first in Utah to suggest that this rule does not hold true in the ineffective assistance of counsel context. *Id.* ¶¶ 21–23. In *Liti*, the defendant argued that his trial counsel provided ineffective assistance by failing to object to an erroneous jury instruction. *Id.* ¶ 10. We recognized that to "merit reversal of his conviction, [the defendant] must . . . demonstrate that his defense was prejudiced by trial counsel's deficient performance—that there is a reasonable probability of a more favorable result absent the error." *Id.* ¶ 21. And any uncertainty regarding the prejudice standard for erroneous jury instructions raised under a claim of ineffective assistance of counsel was conclusively put to rest by the Utah Supreme Court in *State v. Garcia*, 2017 UT 53, when it made clear that "it is the defendant's burden to show that he was prejudiced by his counsel's performance." *Id.* ¶¶ 37–38. As the Court explained, any suggestion that "a defendant need not show she was prejudiced by an erroneous jury instruction resulting from her counsel's ineffective assistance" is "inconsistent with federal precedent." *Id.* ¶ 40. Prejudice is therefore "not shown automatically" nor is it presumed in jury instruction errors attributable to counsel's deficient performance. *Id.* ¶ 36 (citing *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1911 (2017)).

¶12    Instead, the burden is on the defendant to demonstrate that "there is a *reasonable probability* that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695 (emphasis added). But "[i]t is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose

result is reliable." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations and internal quotation marks omitted). The high standard for prejudice therefore requires that the possibility of a different outcome "be substantial, not just conceivable." *Id.* at 112. We therefore "must 'consider the totality of the evidence before the judge or jury' and then 'ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.'" *Garcia*, 2017 UT 53, ¶ 42 (quoting *Strickland*, 466 U.S. at 695–96).

¶13 The State was required to prove at trial that Defendant had "knowledge" that the officers were police officers and that he "knowingly received" a signal to stop from a police officer. *See State v. Bird*, 2015 UT 7, ¶¶ 20, 26, 345 P.3d 1141 (outlining the mens rea elements applicable to section 41-6a-210). Relying on his own testimony at trial, Defendant argues that he did not know the officers were police officers because they never identified themselves as such, their badges were not visible, they were dressed in plain clothes, and the stop lasted longer than normal. But for two main reasons, the evidence as a whole demonstrates the unlikelihood that the jury would have had a reasonable doubt as to whether Defendant knew the three men were police officers under all the circumstances.[3] *See* Utah Code

---

3. Defendant argues that there is evidence of a reasonable probability of a different outcome because the district court believed there was sufficient evidence to justify submitting a self-defense instruction to the jury. The court's decision to give this instruction rested on Defendant's testimony that "he had serious questions about whether [the men] were police officers." But the Utah Supreme Court stated in *State v. Garcia*, 2017 UT 53, that the standard for entitlement to a jury instruction "is in no way synonymous" with *Strickland*'s reasonable probability requirements. *Id.* ¶ 44. The "requirement of a 'reasonable probability' of a different outcome is a relatively high hurdle to

(continued…)

Ann. § 76-2-103(2) (LexisNexis 2017) (providing that "[a] person engages in conduct . . . [k]nowingly, or with knowledge, with respect to his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or the existing circumstances").

¶14    First, Defendant testified that he pulled over because he saw emergency lights activated in the vehicle behind him. And when asked for his license, registration, and insurance, he produced his documentation without question because he believed he was being given a ticket for a traffic violation. Although Defendant challenges the testimony of the officers that they were wearing badges and had identified themselves upon approaching Defendant in his vehicle, Defendant testified that he specifically asked the sergeant who he was and that the sergeant replied that he was with Murray City Police. And the sergeant told Defendant that, following consultation with his parole officer, whom the sergeant named, Defendant's vehicle would be searched pursuant to his parole agreement—

---

(…continued)

overcome" compared to the lower hurdle a defendant must clear to have an instruction submitted to the jury upon request, which is "any reasonable basis in the evidence." *Id.* (citation and internal quotation marks omitted). *See also State v. Torres*, 619 P.2d 694, 695 (Utah 1980) (stating that a defendant is "entitled to have the jury instructed on the law applicable to [his] theory of the case if there is any reasonable basis in the evidence to justify it"). Although the district court allowed the self-defense instruction, this is of limited relevance for us, given the lower standard applicable to giving jury instructions when requested. We instead look beyond Defendant's testimony to the totality of the evidence to determine whether there was a substantial likelihood of a different outcome had a proper elements instruction been given.

Defendant's parole status and the name of his parole officer being the type of information that would be available to law enforcement officers but not to random mischief makers.

¶15 Second, Defendant's behavior after fleeing the scene indicates that he knew he had been stopped by police officers. Defendant did not return home for four days, and during this time, he made no effort to report the incident and complain that he had been stopped by vigilantes, pranksters, or imposters posing as police officers.

¶16 It is exceedingly unlikely that based on the evidence before it, a properly instructed jury would have reasonably doubted whether Defendant knew that the two detectives and their sergeant were police officers. Because there is not a substantial possibility that a different verdict would have resulted from jury instructions containing the necessary mental states for each count, we conclude that Defendant did not suffer any prejudice as a result of the challenged jury instructions. His ineffective assistance of counsel challenges are, therefore, unavailing.

¶17 Affirmed.

_____